In the Matter of the WURLITZER COMPANY et al., Petitioners, *v.* STATE TAX COMMISSION, Respondent.

Third Department, July 19, 1973.

*Phillips, Lytle, Hitchcock, Blaine & Huber (Edward M. Griffith, Jr.,* and *Thomas M. Barney* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General (Francis V. Dow* and *Ruth Kessler Toch* of counsel), for respondent.

HERLIHY, P. J.   This is a proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme

Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained additional corporate franchise tax assessments against the petitioners.

Wurlitzer Company (hereinafter Wurlitzer) is a foreign corporation doing business in New York State since 1909. It manufactures and sells organs, jukeboxes, pianos, stereo equipment and band instruments. In 1957 Wurlitzer formed its wholly owned subsidiary named Wurlitzer Acceptance Corporation (hereinafter WAC), a foreign corporation having neither an office nor real or tangible property within New York. WAC's corporate purpose is to provide financing to Wurlitzer by purchasing Wurlitzer's accounts receivable (security agreements) pursuant to a contract between the two corporations. Wurlitzer performs all functions in regard to the security agreements including credit checks and collection of payments from the debtors for which it is paid a fee by WAC. WAC deals solely in Wurlitzer receivables and does not own any real or tangible property. *All* activities of WAC are performed by employees or officers of Wurlitzer.

The respondent issued notices of franchise tax deficiencies to Wurlitzer and WAC for the fiscal years ended March 31, 1963–1967. The deficiencies are based upon the failure of Wurlitzer to report the net income of both it and WAC in combined reports to accurately reflect Wurlitzer's income subject to the New York franchise tax. Wurlitzer requested a redetermination contending that WAC was not subject to a tax as it was not doing business in New York State and, further, that the respondent was without statutory authority to combine WAC's net income with that of its parent, Wurlitzer.

Subsequently, after an administrative hearing, the respondent upheld the deficiency assessments and the petitioners then commenced this proceeding for review. The petitioners do not raise any question as to the existence of substantial evidence to support the factual findings of the respondent, but assert that, as a matter of law, the income of WAC may not be taxed either directly or indirectly by adding the same to Wurlitzer's income.

Petitioners advance two arguments: (1) that the commission was without authority under the Tax Law to require a combined report of the income of the two corporations absent a showing of unfair transactions between them and (2) that the levying of a franchise tax against the income of WAC was unconstitutional as WAC was not doing business in New York and was engaged exclusively in interstate commerce.

The petitioners first contend that the Tax Commission could not require a combined report because the Tax Law (§ 211, subds. 4 and 5*) requires a showing of unfair transactions between the taxpayer (Wurlitzer) and its subsidiary corporation (WAC) as a prerequisite to a combined report. They contend that no such showing was made and also, somewhat inconsistently, they assert throughout their brief that the commission did, in fact, find their intercompany transactions fair and reasonable. The commission, on the other hand, argues that

---

* Subdivision 4 as applicable to the tax years in question provides as follows: "In the discretion of the tax commission, any taxpayer, which owns or controls either directly or indirectly substantially all the capital stock of one or more other corporations, or substantially all the capital stock of which is owned or controlled either directly or indirectly by one or more other corporations or by interests which own or control either directly or indirectly substantially all the capital stock of one or more other corporations, may be required or permitted to make a report on a combined basis covering any such other corporations and setting forth such information as the tax commission may require; provided, however, that no combined report covering any corporation not a taxpayer shall be required unless the tax commission deems such a report necessary, because of inter-company transactions or some agreement, understanding, arrangement or transaction referred to in subdivision five of this section, in order properly to reflect the tax liability under this article. In the case of a combined report the tax shall be measured by the combined entire net income or combined capital, of all the corporations included in the report. In computing combined entire net income intercorporate dividends shall be eliminated, in computing combined business and investment capital intercorporate stockholdings and intercorporate bills, notes and accounts receivable and payable and other intercorporate indebtedness shall be eliminated and in computing combined subsidiary capital intercorporate stockholdings shall be eliminated."

Subdivision 5 as applicable to the tax years in question provides as follows: "In case it shall appear to the tax commission that any agreement, understanding or arrangement exists between the taxpayer and any other corporation or any person or firm, whereby the activity, business, income or capital of the taxpayer within the state is improperly or inaccurately reflected, the tax commission is authorized and empowered, in its discretion and in such manner as it may determine, to adjust items of income, deductions and capital, and to eliminate assets in computing any allocation percentage provided only that any income directly traceable thereto be also excluded from entire net income, so as equitably to determine the tax. Where (a) any taxpayer conducts its activity or business under any agreement, arrangement or understanding in such manner as either directly or indirectly to benefit its members or stockholders, or any of them, or any person or persons directly or indirectly interested in such activity or business, by entering into any transaction at more or less than a fair price which, but for such agreement, arrangement or understanding, might have been paid or received therefor, or (b) any taxpayer, a substantial portion of whose capital stock is owned either directly or indirectly by another corporation, enters into any transaction with such other corporation on such terms as to create an improper loss or net income, the tax commission may include in the entire net income of the taxpayer the fair profits which, but for such agreement, arrangement or understanding, the taxpayer might have derived from such transaction."

the inclusion of a nontaxpayer (WAC) in a combined report with a taxpayer (Wurlitzer), in order to reflect the proper tax liability, is permissible in two separate situations: (1) because of intercompany transactions *or* (2) because of an agreement, understanding or arrangement whereby the taxpayers' income or capital is improperly or inaccurately reflected. It is the commission's position that it need not show that the intercompany transactions were unfair as between the two corporations, but rather, that such transactions result in an inaccurate reflection of the *entire* net income of the taxpayer. Both parties arrive at their different positions by interpreting the same two sections of the Tax Law. Petitioners insist that subdivision 5 of section 211 of the Tax Law sets up a requirement that transactions between the taxpayer and a subsidiary corporation must be unfair before the latter's income may be included in the former's, via the device of a combined report. They further reason that this requirement applies equally to intercompany transactions mentioned in subdivision 4 of section 211 of the Tax Law. The Tax Commission counters with the argument that the language of subdivision 4 of section 211 is disjunctive and sets up two separate situations when combined reports may be required: intercompany transactions or an unfair agreement between the taxpayer and another.

Although the petitioners cite and discuss the evolution of this particular statute in an attempt to support their argument, the material they rely on clearly shows that the purpose of subdivisions 4 and 5 of section 211 is to prevent the distortion of the net income of a taxpayer. Such distortion, so as to inaccurately reflect the taxpayer's entire net income, can occur either through intercompany transactions *or* an unfair agreement. There is nothing in the statute or its legislative history which mandates a showing that intercompany transactions were unfair as a prerequisite to requiring a combined report. The instant case is proof of this proposition.

At the outset, it should be noted that the commission did not make any finding that the WAC's and Wurlitzer's intercompany transactions were fair and reasonable; it merely stated that Wurlitzer submitted information that the 3% and 4% charge for collections provided a reasonable profit.

The key finding made by the commission, which is dispositive of the case, is that WAC had no separate corporate autonomy and was, in reality, merely the finance department of a unitary business, Wurlitzer. WAC had no separate directors, officers or employees — all these positions were held by Wurlitzer

personnel in addition to their regular duties; Wurlitzer personnel performed all of WAC's business activity; WAC owned no separate real or tangible personal property. Thus, it is quite clear that, except for the fiction of a separate corporate shell, WAC is the same as the other unincorporated divisions of Wurlitzer; it, therefore, is for all intent and purposes the sixth division of the company.

It is important to note that the franchise tax is imposed on foreign corporations for the privilege of doing business in New York and it is based on the *entire* net income of the taxpayer (Wurlitzer) apportioned by statutory formula so that only that amount of income and capital reasonably attributable to New York is taxed (Tax Law, §§ 209 and 210, subd. 3). Since Wurlitzer is doing business in New York and the tax is properly apportioned, it is constitutional (*General Motors Corp.* v. *Washington,* 377 U. S. 436 [1964], rehearing den. 379 U. S. 875 [tax on apportioned gross receipts]; *Northwestern States Portland Cement Co.* v. *State of Minnesota,* 358 U. S. 450 [1959] [tax on apportioned net income]; but, cf. U. S. Code, tit. 15, §§ 381–384). It follows, therefore, that since WAC has no separate corporate autonomy and its income is derived solely from intercompany transactions with Wurlitzer, such income must be included with Wurlitzer's in order to properly reflect the *entire* net income of the New York taxpayer (Wurlitzer) (cf. *People ex rel. Studebaker Corp. of Amer.* v. *Gilchrist,* 244 N. Y. 114, 123).

The petitioners' constitutional issues premised upon the contention that WAC was not doing business in New York and/or was engaged exclusively in interstate commerce become academic upon the findings that WAC is not an independent entity from Wurlitzer and the franchise tax is being levied upon the entire net income of the corporation doing business in New York as appropriately apportioned.

The determination should be confirmed, and the petition dismissed, with costs.

GREENBLOTT, SWEENEY, KANE and MAIN, JJ., concur.

Determination confirmed, and petition dismissed, with costs.